UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BLANCHETTE | : | |
| | : | |
| v. | : | C.A. No. 1:20-cv-00231-WES-PAS |
| | : | |
| THE TOWN OF NARRAGANSETT, | : | |
| *by and through its Treasurer*, CHRISTINE | : | |
| SPAGNOLI; | : | |
| CHIEF SEAN CORRIGAN, *in his Individual* | : | |
| *and Official Capacities;* OFFICER KYLE | : | |
| ROONEY, *in his Individual and Official* | : | |
| *Capacities*; SUPERINTENDENT | : | |
| PETER CUMMINGS, *in his Individual and* | : | |
| *Official Capacities;* and PRINCIPAL DANIEL | : | |
| WARNER, *in his Individual and Official* | : | |
| *Capacities*~~.~~**;** | : | |
| THE NARRAGANSETT SCHOOL | : | |
| SYSTEM, *by and through its* | : | |
| SUPERINTENDENT PETER | : | |
| CUMMINGS; | : | |
| THE NARRAGANSETT SCHOOL | : | |
| COMMITTEE; TAMMY MCNIECE, | : | |
| DIANE S. NOBLES, REBECCA H. | : | |
| DURKIN, JUSTIN SKENYON, | : | |
| and FRANK M. WHITE, *in their* | : | |
| *individual and official capacities as* | : | |
| *Members of* THE | : | |
| NARRAGANSETT SCHOOL | : | |
| COMMITTEE. | : | |

**PLAINTIFF'S PRE-TRIAL MEMORANDUM**

I.  **PLAINTIFF'S PROOF**

   A.  **Overview**

The Narragansett, Rhode Island high school is comprised of administrative staff, such as principals, assistant principals, secretaries, teachers, and students. The Narragansett School Committee entered into a memorandum of understating between the Narragansett School Department and the Narragansett Police Department to establish a School Resource Officer (SRO) Program. From the date the memorandum of understanding was assigned

1

and agreed to, a police officer, under the auspices and direction of the police department, was assigned to patrol the corridors of the public schools.

According to the Basic SRO manual, "an SRO is **not** a disciplinarian of school sanctions. This is strictly the responsibility for administrators and should remain as such to not confuse the role of the SRO as a law enforcement officer."

The Town of Narragansett, the school committee, the school department, the school administrators, and the police department failed to distinguish and separate the role of the police SRO as a non-disciplinarian – the Narraganset SRO's role became a disciplinarian arm of the school administrators.

As of February 2018, the Narraganset Police Department had assigned Officer Kyle Rooney to be the SRO at the Narragansett public schools. Officer Rooney was approximately 39 years of age, approximately six feet in height and well over 200 lbs. Officer Rooney had served in the Marine Corp as a military police officer.

Officer Rooney attended initial NA SRO training in South Kingstown. Officer Rooney did not receive any formal training or direction from the Narragansett High School personnel regarding their expectations of the SRO position. Officer Rooney's direct supervisor was the police day shift lieutenant. Officer Rooney was evaluated on an annual basis. Officer Rooney's role as an adjunct of the school administrators grew and became blurred over time.

As of February 2018, Michael Blanchette was an 11th grade student at Narragansett High School. Michael was sixteen years old and weighed approximately 125 pounds. Michael had a prior history of mental health issues and had an Individualized Education Plan (IEP). Michael was enrolled in the Alternate Learning Program (ALP) for students with

2

social/emotional challenges. Officer Rooney was aware of Michaels social/emotional challenges.

Just after noontime on February 9, 2018, after Michael had been cleared from a medical evaluation regarding a self-harm incident, Michael returned to school. Blurring the role of the SRO, a school administrator directed Officer Rooney to bring Michael into the main office. There is a question whether Officer Rooney initially did so. Michael came out of the main office and Officer Rooney was requested by administration to bring Michael back to the office a second time.

In the simplest of terms, Officer Rooney stopped Michael in the hallway near the main office. A heated conversation took place between a 39-year-old police officer and a 16-year-old student. Michael made a gesture to Office Rooney utilizing his middle finger.

Officer Rooney, using his military and police training, grabbed Michael, threw him to the floor, choked him, held him on the floor for several minutes and charged Michael with disorderly conduct and resisting arrest.

### B. <u>Proof of Facts</u>

Officer Kyle Rooney was employed with the Narragansett Police Department as of February 2018 as the School Resource Officer (SRO) and was assigned to three schools but was primarily at the high school. Officer Rooney was intimately familiar with Michael Blanchette's mental health history, his IEP and being a part of the ALP at the high school. Officer Rooney was aware than an IEP program is mostly designed for students with disabilities. Officer Rooney was aware of Michael's admissions and discharges at various hospitals, including mental health facilities.

On February 9, 2018 at approximately 12:30 p.m. Michael was returning to school after being cleared from a medical evaluation regarding a self-harm incident that morning. In

3

Officer Rooney's arrest report, he stated that he was walking toward the cafeteria to accompany the assistant principal during a lunch period, when he encountered Michael. In his deposition, Officer Rooney testified that he was specifically directed by administrator Sweeney to find Michael and bring him back to the main office.

Officer Rooney testified that upon confronting Michael, he was sworn at and denigrated by Michael. According to Officer Rooney, Michael took a step towards him, stuck out his middle finger and swore. Officer Rooney considered this "aggressive behavior" and "to prevent an assault," Officer Rooney then grabbed Michael's wrist, attempted a leg sweep of Michael's leg, missed the first time, was successful with the leg sweep the second time, and kept Michael on the floor until he stopped struggling and could apply handcuffs.

Michael has denied that he used racial slurs and moved aggressively toward Officer Rooney (both Michael and Officer Rooney are Caucasian).

Fortunately, there is a color video footage provided by the Narraganset High School. There is no audio that accompanies the video It is dated February 9, 2018 and begins at 12:22:52 and ends at 12:30:46. Michael is walking past Officer Rooney towards the main office. Within 30 seconds, Michael is turning around toward Officer Rooney. Officer Rooney walks toward Michael. Michael then raises his left hand in front of his nose, displaying his middle finger to Officer Rooney. Michael then turns to move away from Officer Rooney. Officer Rooney drops his water bottle, grabs Michael's left wrist, attempts a leg sweep of Michael's left leg, fails, and Officer Rooney then uses his left side to flip Michael's body onto the floor of the school hallway. Officer Rooney remained on top of Michael for approximately two minutes.

First and foremost, Officer Rooney, with the instruction and approval of the school administration, was serving not as a SRO, but as a disciplinarian for the school administrator which was beyond the scope of the memorandum of understanding.

Secondly, plaintiff will present evidence that Officer Rooney's use of force was unreasonable and excessive during the incident with Michael. There are four uses of force during the incident. The first instance occurred once Officer Rooney approached Michael (officer presence). The second instance occurred once Officer Rooney began speaking to Michael (verbalization). The third instance occurred when Officer Rooney grabbed Michael's wrist for "wrist control" (empty hand control soft technique). The fourth instance occurred when Officer Rooney executed a leg sweep in order to put Michael on the ground (empty hand control hard technique).

Officer Rooney did not use "objectively reasonable" force. There was no crime that Michael was being arrested for. There was no immediate threat to the officer. There was no resisting of arrest or an attempt to evade arrest.

Evidence will be elicited that a reasonably competent and well-trained police officer would not undertake the actions that Officer Rooney engaged in and, in light of all the circumstances known to Officer Rooney, no reasonable officer would have concluded that a crime had been committed and that an immediate, warrantless arrest was necessary.

Based on the proof of fact, evidence will be presented and elicited that:

a. Michael was not engaged in disorderly conduct on February 9, 2018.

b. There was no basis to arrest Michael without a warrant.

c. The force employed by Officer Rooney in effectuating the arrest was unreasonable and excessive.

d. Officer Rooney's actions violated the police department's polices on interactions with individuals with mental illness, juvenile operations and limits of authority.

e. The police department failed to conduct a reasonable review of Officer Rooney's use of force.

f. The police department's conclusion that Officer Rooney used reasonable force is an unreasonable conclusion.

## II. **LEGAL CLAIMS**

Michael Blanchette claims violation of his rights under 42 USC Section 1983, the First, Fourth and Fourteenth Amendment to the United States Constitution the common law of the State of Rhode Island. Specifically, Michael Blanchette alleges that on February 9 2018, Michael Blanchette was a student at Narragansett High School. Officer Kyle Rooney, a member of the Narragansett Police Department, was serving as a School Resource Officer. In the school lobby/main entrance area, Officer Rooney confronted Michael Blanchette and after a brief conversation and without provocation Officer Rooney grabbed Michael Blanchette, threw him to the ground, choked him for several minutes, arrested him and charged him with disorderly conduct and resisting arrest. The charges were subsequently dismissed.

Michael Blanchette claims, pursuant to 41 USC Section 1983, that Officer Rooney, under color of state law, in violation of the Fourth and Fourteenth Amendment, illegally stopped and seized him. Further, in violation of the Fourth and Fourteenth Amendments, Officer Rooney also used excessive force in seizing and arresting Michael Blanchette when Michael Blanchette exercised his right to free speech. There are also additional claims that Officer Rooney's actions constituted a common law assault, battery, false imprisonment,

intentional infliction of emotional distress. With respect to supervisory personnel, Michael Blanchette alleges that their actions constitute malicious prosecution and supervisory liability. The Town of Narragansett is also culpable based on municipal liability and negligence.

The defendants have asserted affirmative defenses of qualified immunity, public duty doctrine, statutory cap in damages and statutory and common law immunity.

As the precipitating factor, any discussion of the seizure, the assault, and the arrest begins and ends with the middle finger gesture.

"Giving the finger" is a gesture of insult known for centuries *Swart v. Insogna*, 704 F.3d 105 (2d Cir. 2013) citing *Bad Frog Brewery Inc. v. N.Y. State Liquor Authority*, 134 F.2d 87 (2d Cir. 1988), which reports the use of the gesture by Diogenes to insult Demosthenes. (Although not set forth in the *Bad Frog Brewery Case*, Diogenes was living between 412 B.C. to 323 B.C.)

The first reported use of the gesture in the United States occurred in 1886 when a joint baseball team photograph of the Boston Beaneaters (Boston Braves by 1914) shows a Boston pitcher giving the finger to the New York Giants.

In *State of North Carolina v. Ellis*, Supreme Court of N.C, No 340 A19 (May 2020) a vehicle passenger while passing a state trooper helping a stranded motorist, opened his window and gestured to the police officer with a pumping up and down motion of his middle finger. The vehicle was stopped by the officer who concluded that the passenger's gesture constituted disorderly conduct and/or breach of the peace. The North Carolina definition of disorderly conduct is similar to the Rhode Island definition. The North Carolina Supreme Court held that "flipping the bird" is insufficient to be a basis of disorderly conduct or breach of the peace. In *Swartz v. Insogna*, supra, the Second Circuit held

7

that "giving the finger" to a police officer cannot alone establish probable cause to believe a disorderly conduct violation had occurred.

Pursuant to 42 USC Section 1983, Michael Blanchette alleges that upon making the middle finger gesture to Officer Rooney, Michael Blanchette was unlawfully seized in violation of his Fourth Amendment rights. A seizure occurs, for purposes of the Fourth Amendment, when there has been either application of physical force or submission to authority. *Petro v. Town of West Warwick*, 889 F. Supp. 2d 292 (RI, 2012). Here, there was application of physical force by Officer Rooney. Once it is established that Michael Blanchette was seized, the question is whether officer Rooney had a "reasonable suspicion supported by articulable facts that criminal activity may be afoot." *Klavke v. Daly*, 595 F. 3d 20 (1st Cir, 201). This is a two-step process as enunciated in *Foley v. Kiely*, 6702 F.3d 28 (1st Cir. 201). The first step requires that there was a "particularized and objective basis for suspecting the person stopped of criminal activity." This reasonable suspicion inquiry is an objective one. Once it is clear that a seizure has occurred, the Court should examine the action of the government official leading up to the seizure. See *Young v. City of Providence*, 404 F. 3d 4 (1st Cir, 2005).

A refusal to cooperate, without more, does not furnish the minimum level of objective justification needed or a detention or seizure. *Florida v. Bostick*, 501 US 429, 111 S. Ct. 2382 (1991). Walking away cannot alone support a finding of reasonable suspicion. See *United States V. Events* 105 F. 3d 487 (9th Cir., 1997).

Even if Officer Rooney's stop was justified at the outset, Officer Rooney cannot succeed on the second prong of the reasonable suspicion analysis – the left wrist hold and takedown was not "related in scope to the circumstances which justified the interference in the first place." *Foley*, 602 F.3d at 32.

Under the Fourth Amendment, probable cause is necessary to justify an arrest. *Glik v. Cunniffe*, 655 F. 3d 78 (1st Cir. 2011). An officer has probable cause to arrest where, at the time of the arrest, the "facts and circumstances within the officer's knowledge … are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Holder v. Town of Sandown,* 585 F3d 500, 501 (1st Cir. 2009).

Even if Officer Rooney had probable cause to arrest Michael Blanchette for his gesture, if the Court or jury finds that was more of a threat than a gesture, the officer maintains liability for an initial unlawful seizure, regardless whether an arrestee commits a crime thereafter that provides probable cause for a new and distinct crime. See *Green v. Missouri*, 734 F Supp. 2nd 814 (E.D. Mo. 2010).

If Michael Blanchette was unlawfully seized without legal justification, then Michael Blanchette would prevail on his claim for assault and battery. *Proffitt v. Ricci*, 463 A.2d 514 (RI 1983).

Officer Rooney may argue that after he stopped Michael Blanchett, he was in fear of imminent harm from Michael Blanchette's reactionary gesture with his finger/hand. However, if an officer does not allow a person to proceed on his way when commanded to stop without justification, the officer may not later argue fear of imminent harm from Michael Blanchette's defensive, reactionary gesture. *Petro v. Town of West Warwick* @ supra.

As an affirmative defense, defendant claims that Officer Rooney is shielded by qualified immunity for his actions.

Qualified immunity is a judge-made doctrine designed to balance two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distinction and liability when

9

they perform their duties responsibly. See *Haley v. City of Boston*, 657 F. 3rd 39 (1st Cir., 2011), *Pearson v. Callahan*, 555 U.S. 223, S. Ct. 808 (2009). Qualified immunity does not shield officers, who from an objective standpoint, should have known that their conduct was unlawful. *Pagan v. Calderon*, 448 F. 3d 16 (1st Cir. 2006). Courts follow a two-step process in order to determine whether an officer is entitled to qualified immunity. First, whether the facts Michael Blanchette have alleged make out a violation of a constitutional right. Secondly, if so, whether the right of issue was clearly established at the time of Officer Rooney's alleged conduct. See *Pearson*, 55 U.S. @ 223.

A case on point is *Cruise-Gulyas v. Minard,* No. 18-2196 (6th Cir. 2019) where a police officer pulled over a driver for speeding, gave her a ticket for a non-moving violation and as she drove away, she gave the officer the finger. The officer pulled the plaintiff over again and changed the ticket to a moving violation. Plaintiff sued the officer under Section 1983, alleging that he violated her Fourth and Fourteenth Amendment rights regarding seizure and her First Amendment right of protected speech. The officer moved for judgment on the pleadings based upon qualified immunity. Utilizing the two-prong test, the Court first held that the second stop was an unlawful seizure. Regarding the second prong, citing *Swartz v. Insogna*, supra, this ancient gesture of insult is not the basis for a reasonable suspicion of a traffic violation or impending criminal activity. Precedent clearly establishes that any reasonable officer would know that a citizen who uses his middle finger engages in speech protected by the First Amendment. *Sandul v. Larion*, 119 F. 3rd 1250 (6th Cir. 1997).

Likewise, if excessive force was used, as plaintiff claims, any qualified immunity would be vitiated. It is well settled that the "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989).

10

However, where an officer uses greater than reasonable force during an arrest or investigatory stop, the Fourth Amendment is implicated. *Raiche v. Pietroski,* 623 F.3d 30, 36 (1st Cir. 2010). To determine whether force was reasonable under the circumstances, a court should consider "three non-exclusive factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight. *Raiche*, 623 F. 3d at 36 (quoting *Graham* 490 U.S. at 396, 109 S.Ct. 1865).

Here, utilizing the three factors, the force used by Officer Rooney was unreasonable and excessive.

With respect to the common law counts for Assault, Battery and Malicious Prosecution, the plaintiff asserts that an assault is a physical act of a threatening nature, or an offer of corporal injury which puts an individual in reasonable fear of imminent bodily harm. *State v. Cardona*, 969 A. 2d 667 (RI 2009) Assault can also be an unlawful attempt to offer, with force or violence to do a corporal hurt to another, whether from malice or wantonness. *State v. Coningford*, 901 A. 2d 623 (RI 2006).

Malicious prosecution is a suit for damages resulting from a prior criminal or civil legal proceeding that was instituted maliciously and without probable cause and terminated unsuccessfully for the police. *Palazzo v Alves* 944 A. 2d 144 (RI 2008).

Damages for false arrest or false imprisonment in Rhode Island are available when imprisonment is improper or unjustified. *Moody v. McElroy*, 513 A. 2d 5 (RI 1986). Whenever a person unlawfully obstructs or deprives another of his freedom to choose his location, for however brief a period of time, that person will be liable for that interference. *Moody*, supra.

Michael Blanchette has alleged in Count X that the Town of Narragansett has liability based upon its customs, policies, and/or practices exhibiting deliberate indifference to the constitutional right of its citizens, including Michael Blanchette.

When there is a claim of inadequate training, the town's failure to train need be the product of deliberate indifference such that the town disregarded a known or obvious risk of harm. *Estate of Bennett v. Wainwright*, 548 F. 3d 155, (1st Cir. 2008). If Officer Rooney's actions result in a constitutional violation caused by a policy or custom of the town, such actions will constitute municipal liability under 42 USC Section 1983. Further, a municipality may be liable under 42 USC Section 1983 if that government body subjects a person to a deprivation of rights or causes a person to be subject to such deprivation. *Monell v Deputy Social Services*, 436 US 658 (1978).

Here, whether by custom, policy or practice, the Town of Narragansett, its school committee, superintendent of schools and high school principal initiated a School Resource Officer Program whereby a police officer would be available in the public schools for evacuations, active school shooters and emergencies. The role of the SRO was to be a resource in a crisis. The SRO was to report only to the police department. The SRO's role was to be first in line of defense in case a crisis occurred. The SRO was to have no role in enforcing school policies or discipline. By February 9, 2018 and on February 9, 2018 through custom, policy, or practice, the SOR's role had morphed into a disciplinarian arm of the school administrators – a role that Officer Rooney was not trained for as the events of February 9, 2018 bear witness.

12

### III. ANTICIPATED MOTIONS IN LIMINE

A. <u>Michael Blanchette's Record of School Discipline</u>

Michael Blanchette will file a motion in limine to exclude all records and evidence of school discipline. Michael Blanchette was a minor at the time of any discipline and the actions of Officer Rooney on February 9, 2018 were unrelated to any prior discipline.

B. <u>Michael Blanchette's Medical Records</u>

Other than the medical records of February 9, 2018, all other records pre-dating February 9, 2018 are neither probative nor relevant.

### IV. WITNESS LIST

<u>Plaintiff Michael Blanchette</u>. Plaintiff will testify as to the facts surrounding his unlawful arrest and the damages suffered.

<u>Charlene Blanchette</u>. As Michael's mother, Mrs. Blanchette will testify regarding the facts and circumstances both before and after the unlawful arrest and the effect on Michael.

<u>David Blanchette</u>. As Michael's father, Mr. Blanchette will testify regarding the facts and circumstances both before and after the unlawful arrest and the effect on Michael.

<u>Sean Corrigan</u>. Adverse witness. Mr. Corrigan was the police chief on February 9k 2018 and supervised the investigation.

<u>Peter Cummings</u>. Adverse witness. Mr. Cummings was the superintendent of schools on February 9, 2018 and will testify regarding his post-February 9, 2018 investigation and the SRO program.

<u>Kyle Rooney</u>. Adverse witness. Officer Rooney was the SRO officer on duty on February 9, 018 and was responsible for the unlawful actions taken.

<u>David Warner</u>. Adverse witness. David Warner was the principal of Narragansett High School on February 9, 2018 and will testify regarding the February 9, 2018 occurrence,

the facts pre-dating the occurrence and the SRO program and its relationship to the school administration.

<u>Matt Sutton</u>. Adverse witness. Captain Sutton of the Narragansett Police Department will testify regarding the levels of review of the actions taken on February 9, 2018.

<u>Emily Sweeney</u>. Adverse witness. Ms. Sweeney was present in the school on February 9, 2018 and was involved in requesting certain action by Office Rooney. Ms. Sweeney was secretary at Narragansett High School.

<u>Toby Gibbons</u>. Adverse witness. Mr. Gibbons was the vice principal of Narragansett High School on February 9, 2018 and was present in the high school.

<u>Expert Witness, Michael D. Pearl, Robson Forensic</u>. Mr. Pearl, as a police officer and expert regarding training, supervision, and use of force by police officers will testify in conjunction with his expert disclosure dated August 19, 2022.

## V. **LIST OF EXHIBITS**

1. Memorandum of Understanding (MOU) between the Narragansett School System and Narragansett Police Department Regarding the School Resource Officer, dated 6/23/14
2. Narragansett Police Department Policy 100.01 Limits of Authority
3. Narragansett Police Department Policy 300.01 Use of Force
4. Narragansett Police Department Policy 350.01 Juvenile Operations
5. Narraganset Police Department Police 320.14 Individuals w/ Mental Illness
6. Narragansett Police Department Job Description for Community Police Officer/School Resource Officer
7. Narragansett Police Report 18-86-AR, dated 2/9/18
8. Narragansett High School Surveillance Cam Video of Subject Incident, dated 2/9/18
9. Final RFP Response No. 14 Police Manual
10. Defendant Kyle Rooney's Response to Plaintiff's First Set of Interrogatories, dated 4/6/21
11. Rooney personnel file
12. Rhode Island Law Enforcement Officers Official Manual, dated December 2013
13. South County Hospital Emergency Department Record, dated 2/9/18

14. Redacted Witness Statements of Julia and Lauren (L/N/U (juveniles), dated 2/27/2018 and 2/28/2018
15. Email from Corrigan to Town Manager Jim Tierney, dated 1/11/2020
16. Letter from Corrigan to Superintendent Dr. Peter Cummins, dated, 1/13/2020
17. Deposition of Kyle Rooney
18. Deposition of Daniel Warner
19. Narragansett Police Department Organizational Chart
20. Narragansett Police Department Organizational Structure
21. Report of Michael Pearl
22. Series of photographs of Michael Blanchette's graduation
23. Michael Blanchette IEP program

## VI. **ANTICIPATED LENGTH OF TRIAL**

After jury selection, Michael Blanchette anticipates his case in chief will take at least 5 to 7 days to conduct.

                Plaintiff,
                By his Attorneys,


                  /s/ Amato A. DeLuca
                Amato A. DeLuca (#0531)
                **DeLUCA & ASSOCIATES, LTD.**
                199 North Main Street
                Providence, RI  02903
                (401) 453-1500
                (401) 453-1501  Fax
                bud@delucaandassociates.com

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BLANCHETTE | : | |
| | : | |
| v. | : | C.A. No. 1:20-cv-00231-WES-PAS |
| | : | |
| THE TOWN OF NARRAGANSETT, *by and through its Treasurer*, CHRISTINE SPAGNOLI; CHIEF SEAN CORRIGAN, *in his Individual and Official Capacities;* OFFICER KYLE ROONEY, *in his Individual and Official Capacities*; SUPERINTENDENT PETER CUMMINGS, *in his Individual and Official Capacities;* and PRINCIPAL DANIEL WARNER, *in his Individual and Official Capacities*.; THE NARRAGANSETT SCHOOL SYSTEM, *by and through its* SUPERINTENDENT PETER CUMMINGS; THE NARRAGANSETT SCHOOL COMMITTEE; TAMMY MCNIECE, DIANE S. NOBLES, REBECCA H. DURKIN, JUSTIN SKENYON, and FRANK M. WHITE, *in their individual and official capacities as Members of* THE NARRAGANSETT SCHOOL COMMITTEE. | : | |

## CERTIFICATE OF SERVICE

I hereby certified that a true and accurate copy of the following document:

*Plaintiff's Pre-Trial Memorandum*

was sent by electronic mail on this 16th day of December 2022 to the following counsel of record:

    Marc DeSisto, Esq.
    Caroline Murphy, Esq.
    DeSisto Law LLC
    60 Ship Street
    Providence, RI 02903
    *Counsel for Defendant*

                                                            /s/ Amato A. DeLuca