UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MICHAEL BLANCHETTE
    *Plaintiff,*

v.                                      C.A. No. 1:20-cv-00231-WES-PAS

THE TOWN OF NARRAGANSETT,
*By and through its Treasurer*, CHRISTINE
SPAGNOLI,
CHIEF SEAN CORRIGAN, *in his individual
And Official Capacities;* OFFICER KYLE
ROONEY, *in his individual and official
Capacities;* SUPERINTENDENT
PETER CUMMINGS, *in his individual and
Official capacities; and* PRINCIPAL DANIEL
WARNER, *in his individual and official
Capacities;*
THE NARRAGANSETT SCHOOL
SYSTEM, *by and through its*
SUPERINTENDENT PETER
CUMMINGS;
THE NARRAGANSETT SCHOOL
COMMITTEE; TAMMY MCNIECE,
DIANE S. NOBLES, REBECCA H.
DURKIN, JUSTIN SKENYON,
And FRANK M. WHITE, *in their
Individual and official capacities as
Members of* THE NARRAGANSETT
SCHOOL COMMITTEE
    *Defendants.*


**<u>DEFENDANTS' PRETRIAL MEMORANDUM</u>**


**I.**    <u>**PARTIES AND ATTORNEYS**</u>

    1.  <u>Plaintiff</u> – Michael Blanchette, represented by Amato DeLuca, (DeLuca & Associates)

    2.  <u>Defendants</u>, Town of Narragansett, Chief Sean Corrigan, Officer Kyle Rooney,

        Superintendent Peter Cummings and Principal Daniel Warner. Narragansett School

System, Narragansett School Committee and its committee members, Tammy McNiece, Diane S. Nobles, Rebecca H. Durkin, Justin Skenyon, and Frank M. White represented by Marc DeSisto, Esq. and Caroline V. Murphy, Esq.

## II.    COUNTS IN THE COMPLAINT

1. Count 1: 1983 Fourth and Fourteenth amendment violations against Officer Kyle Rooney- Illegal Stop and Seizure

2. Count II: 1983 Fourth and Fourteenth amendment violation against Officer Kyle Rooney Excessive Force

3. Count III: First Amendment Retaliation against Officer Kyle Rooney and Chief Sean Corrigan

4. Count IV and V: Assault and Battery against Officer Kyle Rooney

5. Count VI: False Imprisonment against Officer Kyle Rooney

6. Count VII- Intentional Infliction of Emotional Distress against Officer Kyle Rooney

7. Count VIII- Malicious Persecution against Officer Kyle Rooney, Sean Corrigan and Town of Narragansett

8. Count IX- Supervisory Liability against Chief Corrigan, Superintendent Peter Cummings and Principal Daniel Warner

9. Count X- Municipal Liability against Town of Narragansett

10. Count XI- Negligence against Town of Narragansett, Superintendent Peter Cummings and Principal Daniel Warner.

## III.    FACTUAL BACKGROUND

Plaintiff, Michael Blanchette was a student at Narragansett High School. On February 9, 2018, the Narragansett High School's school resource officer, Officer Kyle Rooney arrested Michael for resisting arrest and disorderly conduct in the hallway of the Narragansett High School. Officer Rooney's actions that day were based on the totality of the circumstances. The totality of the circumstances included everything that Officer Rooney "dealt with him up until that point, the

2

totality of the circumstances with the domestics, the chasing through the woods with a knife, the statements that he's made, showing up at a school in a ski mask." The facts that make up the totality of the circumstances spans a lengthy timeframe, the "complete totality of the circumstances regarding this, regarding Michael's behavior, regarding his actions, regarding his statements just within a few weeks, let alone the two or there years that we were dealing with him regularly."

Although Michael had discipline issues for disorderly conduct as early as March 2015, the main facts that factored into Officer Rooney's actions on February 9, 2018 begin on December 23, 2016. On December 23, 2016, Narragansett police respond to Michael Blanchette's home for a call from his mother, Mrs. Charlene Blanchette, who reports that Michael left a note saying he was "the problem." On April 20, 2017, Narragansett police respond to the house for a report of an out-of-control juvenile with a knife and hammer. Michael made threatening remarks to harm himself, family members and police, and is transferred to South County Hospital's Emergency Room. Officer Rooney is one of the officers who responds to the house. Officer Rooney travels to the hospital and remains with Michael until Michael is under hospital's staff care.

A few days later, on April 25, 2017, the Narragansett police respond to a call from Mrs. Blanchette who reports that her son is getting out of control and will not go to school. On May 30, 2017, the police respond to a call from Michael's father, Mr. David Blanchette, stating his son is destroying the house. En route, Mr. Blanchette informs the police that his son had possession of two steak knives and is out on the front lawn. Michael tells an officer that he lost his temper and he did pick up two steak knives because he knew it would send a message to his parents. On May 31, 2017, the Narragansett police respond to a call from Mr. Blanchette stating that his son was banging the door and smashing up the house. Upon arrival, Mr. Blanchette informs the police that Michael made a noose earlier in the day, indicating he would use that to kill himself. Michael is

transported to South County Emergency Room ("SCER") for an evaluation. The police continue to respond to the house for matters involving Michael, including reports from Michael's own sister. On November 27, 2017, the police respond to the Blanchette's residence for a call from Michael's sister who reports that Michael threw a skateboard at her.

Two days later, on November 29, 2017, Michael is caught smoking a marijuana vape pen in school in the bathroom. An administrator tells Michael to go to the office, and Michael does not comply and instead leaves the building and does not return. The Narragansett High School Assistant Principal, Toby Gibbons, sends a letter to his parents to inform them that Michael will be suspended out of school for a period of two days effective November 30, 2017. In the letter, Mr. Gibbons informs the parents that Michael will be required to meet three times with Ms. Laider, the student assistance counselor at the High School. This was not the first instance of Michael with drugs and paraphernalia in school and Michael had left school grounds without permission on multiple occasions prior to this incident.

On January 9, 2018, Michael calls a teacher a "f***ing pedophile." Mr. Gibbons sends a letter to his parents that same day to inform them that Michael has been suspended out of school for a period of two days due to his abusive, inappropriate language and defiance towards this teacher.

On January 26, 2018, Michael calls to request transport to be seen for depression. The police respond and Mr. Blanchette reports that Michael does not need to go to the hospital at this time. Three days later, on January 29, 2018, Mrs. Blanchette calls the police early in the morning around 1:00 a.m. stating "her son hadn't returned home and requested advice from an officer."

Later that day, Michael is in school and calls a teacher a "mother f***ing pedophile." Later that day, Michael presents a note to a high school staff member indicating that he wanted to kill

himself. Officer Rooney speaks with Michael and Michael asks Officer Rooney if Rooney can transport him to the South County Hospital Emergency Room for an evaluation. Mr. Gibbons calls and leaves Michael's parents voicemails in regards to the transport and incident. Michael tells Officer Rooney he needs help because he isn't in a good place. Upon arrival to the SCER, Officer Rooney provides the hospital staff with a copy of his written letter so that they can pass it along to South County Shore Mental Health staff upon their arrival. On January 30, 2018, Mr. Gibbons send Mr. and Mrs. Blanchette a letter to inform them that Michael has been suspended for an in-school suspension for a period of two days, effective Wednesday, January 31, 2018 for his insubordination and abusive language to the teacher on January 29, 2018 in which he called the teacher a "mother f***ing pedophile."

On February 1, 2018, Michael leaves the school grounds without permission. Michael returns to the school, and enters the main office. Michael begins swearing and using racial slurs including the N-word to the front desk staff. The school secretary, Ms. Emily Sweeney, observes the entire exchange. A student's parent named Tom Mitchell is in the office and he is holding a small child. Ms. Sweeney observes Mr. Mitchell tell Michael to not use that language. Michael responds and threatens Mr. Mitchell saying, "I am going to kill you." Ms. Sweeney observes this whole event and reports what she observes to the Mr. Gibbons and Officer Rooney. Officer Rooney also receives information that Michael made a maneuver towards Mr. Mitchell. Michael is disciplined with an out of school suspension for February 2, 2018 and February 3, 2018. Mr. Gibbons sends a letter to Mr. and Mrs. Blanchette informing them that Michael's suspension is for Michael's "abusive language, racial slurs, fighting, and major disruption," and that Michael can be readmitted once a risk assessment has been taken.

During Michael's suspension, on or about February 2, 2018, Michael sneaks into the school behind a parent who is buzzed into the front door of the building. Michael is not visible to the main desk when buzzing the parent into the front entrance. Ms. Sweeney observes Michael enter the main office wearing a ski mask that she described to be scary with teeth on it that appeared almost like joker mask, and Michael begins demanding to speak with Mr. Gibbons. Ms. Sweeney finds the situation to be very scary. Since Mr. Gibbons was not in the office, she felt unsafe and left the office to find him. She tells Mr. Gibbons she does not feel comfortable being in the office while Michael is in there and to let her know when Michael leaves. Ms. Sweeney informs Officer Rooney of these events soon after.

On February 5, 2018, Michael receives a risk assessment evaluation through the school and is re-entered into the school. At around this time, students were coming up to Officer Rooney saying Michael was making them uncomfortable with his behavior in class and on social media. The students' concerns regarding Michael's behavior and his social media were during a time period when school shootings were occurring nationwide. Although Officer Rooney did not see the social media posts first hand, Michael is posting Snapchats publicly for anyone to see. In a video date stamped February 6, 2018, Blanchette talks to the camera and says, "That Ian kids way too lucky that I'm getting rid of my emotions right now bro, if I had enough energy to he'd have fucking 7 Glocks to his fucking head right now you have no fucking clue." Neither Michael or his parents inform the school or show this Snapchat to the school.

On or about February 8, 2018, a school staff member observes cuts on Michael's legs and reports the matter to Mr. Gibbons. Mr. Gibbons in consult with the nurse, calls Michael's parents to take him to the hospital. Mr. Gibbons also informs the parents that Michael needs to be medically cleared and that the parents and Michael will need to meet with him before re-entering

the school. Michael's parents did not bring Michael to the hospital. Per reporting guidelines, Mr. Gibbons contacts the Department of Children Youth and Services regarding the cuts. On or about the evening of February 8, 2018, an investigator from Department of Children Youth and Services appears at the Blanchette's house to speak with Michael and his parents.

The following morning, on February 9, 2018, Mrs. Blanchette calls Mr. Gibbons asking if Michael needs a psychological evaluation done before he returns to school. Mr. Gibbons confirms with Mrs. Blanchette that Michael needs an evaluation and he needs to be medically cleared before returning to school. Mr. Gibbons informs Mrs. Blanchette that she needs to walk Michael into the school and both she and Michael need to meet with him for a re-entry meeting, and specifically makes it clear to her that she cannot just drop Michael off like she has done in the past. The school's protocol for a re-entry meeting is to meet with a parent and the student after the student is out on this kind of medical leave to receive confirmation that the student is medically cleared to return to school and to discuss the best plan for the student.

 At around 11:15 a.m., Mrs. Blanchette calls the school and speaks with Ms. Sweeney advising Ms. Sweeney that she is bringing Michael to school. The mother informs Ms. Sweeney that Michael is aggravated and it would be best if neither Mr. Gibbons or Officer Rooney are present during his arrival due to his aggravated state. Mrs. Blanchette apparently says in the call "good luck with him." Officer Rooney and Mr. Gibbons decide it would be best if Officer Rooney stands by in the school to be sure to keep a safe environment.

When Michael enters the school, Ms. Sweeney sees Mrs. Blanchette drop him off at the front and drive off. Mrs. Blanchette does not follow the school's instruction of walking him into school and meeting with Mr. Gibbons for a re-entry meeting. Ms. Sweeney informs Mr. Gibbons that Michael was in the office and Mrs. Blanchette called, dropped him off and drove away. Given

that Mrs. Blanchette did not follow protocol for a re-entry meeting, Mr. Gibbons told Michael that he either had to go to stay in the office, go over to the guidance office, or to the Alternative Learning Program ("ALP") room. The Alternative Learning Program room is a room for students who are part of the Alternative Learning Program or a space for students to eat their lunch if the students experience too much anxiety eating lunch in the cafeteria.

In the time Michael leaves the office, Officer Rooney comes into the main office and the secretary Ms. Sweeney tells Officer Rooney about the phone calls with Michael's mother, about Michael being in school, and the mother not meeting with Mr. Gibbons. At this time, Officer Rooney is aware that Mrs. Blanchette did not provide any documentation to the school that Michael was medically cleared, and that Mrs. Blanchette did not meet with Mr. Gibbons to discuss safety or specifics about his return. Officer Rooney is also aware of Michael's escalating behavior in and outside of school because he was kept informed by both the police department and the school department about matters involving Michael in his role as the School Resource Officer.

Officer Rooney encounters Michael in the hallway with two to three students talking about getting some Juuls loud enough that Officer Rooney could hear. Officer Rooney advises Michael that he should be in the ALP classroom since he has just arrived to school and to check in with Mrs. Thompson who is his ALP advisor. Michael tells Officer Rooney to "f*** off" and that he had lunch. Officer Rooney responds telling Michael to not speak with him that way and if he did in fact have lunch to return to the cafeteria. Michael proceeds to call Officer Rooney a "f**ing n****," a "f***king b****," and a "piece of sh** public servant." Officer Rooney then advises Michael that if he continues to carry in on that way, he would take him into custody for disorderly conduct and tumultuous behavior." Michael proceeds to tell Officer Rooney to "f*** off" and

called him a "n******" saying he was allowed to go for walks because he was in ALP. Officer Rooney advises Michael that he needs to speak with Mrs. Thompson for approval.

Michael then takes a step towards Officer Rooney which Officer Rooney observed to be done "aggressively" and sticks his middle finger in Officer Rooney's face saying "f*** you." Based on Michael's aggressive behavior to prevent an assault, Officer Rooney obtains wrist control and conducts a leg sweep on his rear leg taking Michael down to the ground. The maneuvers Officer Rooney used are part of training and are maneuvers he has instructed as a training officer on use of force/combat. He explains that maneuver allows an officer to get an individual on the ground which makes it easier for the officer to gain control.

When Officer Rooney does the leg sweep, he misses his first attempt and attempts it a second time successfully. Michael falls to the ground and Officer Rooney maintains side control while Michael continues to resist. At this point, Mr. Gibbons arrives and observes commotion. Two other students L.M and J.K. are also observing this interaction, in addition to two other faculty members. During the struggle, Michael is scratching at the back of Officer Rooney's neck. Michael attempts one more burst of a struggle and in doing so, Officer Rooney allows Michael to turn belly down on to the floor. Officer Rooney maintains control and steady pressure while transitioning to back control and holding the position until Michael complies to verbal direction to place his hands behind his back so he could apply handcuffs. During the struggle, Michael says to Officer Rooney that "my boys are gonna get your a** you f**in piece of shit" and "you're gonna get f**** up Rooney, just wait" at which point Officer Rooney advises Michael to stop talking. Officer Rooney then escorts Michael to his vehicle Cruiser 14 where he was searched prior to transport to Narragansett Police Department for processing. While Michael is being processed, Officer Rooney informs Michael that he will be going to SCER for an evaluation.

Officer Rooney's response to Michael's actions in the hallway on February 9, 2018 were based on the totality of circumstances, including his knowledge of Michael's behavior in the past both in school and outside of school. He says Michael has said "f*** you" to him multiple times, but the words alone never prompted him to use force on Michael. He said the fact that Michael had threatened self-harm in the past, had used racial slurs and threatened to kill a parent just a few days prior, and there was a buzz around school where students were scared Michael was going to do something dangerous factored all into the significance behind Michael's actions towards him. He said that the situation with Michael was escalating quickly and dangerous and that Michael's actions were another move by Michael to show it was a dangerous situation that needed to be controlled. He said this all factored into his decision to use force on Michael to secure him in a safe and controlled state.

After Michael is arrested and processed, Michael is given a "NFT" which stands for "No Further Trouble" in which Michael is required to stay out of trouble until December 18, 2018 in order for the charge to be erased from his record. Michael violates the NFT and the probation is extended at least twice up to June 4, 2019. Michael eventually ages out. The charges were never dropped with prejudice, nor did Michael's attorney ever mount a defense in the criminal charges against Michael.

The February 9, 2018 incident itself was reviewed by the Narragansett Police Department through its multi- level review protocol for use of force matters. Sargent Kevin Bousquet reviewed surveillance footage that depicted most of the interaction, but did not capture the audio. Sgt. Bousquet conducted the initial review of Officer Rooney's use of force, and Detective James Wass conducted interviews of two female students seen on the surveillance footage and further investigation. Captain Matthew Sutton conducted a use of force review. The use of force review

took into consideration prior police incidents that Officer Rooney had knowledge of involving Michael Blanchette. Those incidents included physical altercations, threats of violence, destruction of property, brandishing weapons including knives and a mallet, and assaulting his sister. Captain Sutton referred to the Narragansett Police Department policies governing the matter, and determined that "Officer Rooney's decision to use force and the level of force used were necessary, appropriate and policy compliant," Captain Sutton wrote a thirteen-paragraph analysis of the acts and described the application of the policies in his Use of Force Review, including the Narragansett Police Department Policy 300.01 for Objectively Reasonable Force. The Use of Force Review was completed on or about March 21, 2018 and submitted to Chief Corrigan who reviewed the entire package and concurred with the findings.

The Narragansett Police Department also conducted a threat assessment of Michael on February 20, 2018 and continued the threat assessment documenting incidents into September 2019. The Narragansett Police Department's assessment states, in part, the following:

> The Narragansett Police Department had numerous dealings with Michael since the end of 2016. NPD had responded to 195 Sunnybrook Farm Rd. numerous times for disturbances and threats of suicide. In several instances Blanchette had reportedly wielded knives obtained from the house. There is no information indicating he has access to any firearms. Blanchette also had issues at NHS. As of February 26, 2018 he was attending the Bradley School for a minimum of four weeks.

The February 9, 2018 incident was also reviewed by the Rhode Island Department of Education, in concert with the Rhode Island State Police in a meeting involving members of the Rhode Island Department Education, Narragansett School System, Narragansett Police Department and Rhode Island State Police. On January 10, 2020, the Narragansett police department are informed that Mrs. Blanchette brought a copy of the surveillance video to the

Commissioner for the Rhode Island Department of Education, Angelica M. Infante Green. Rhode Island State Police Colonel James Manni contacts Chief Corrigan and advises the Chief that the Commissioner requested that the Rhode Island State Police Department review the video. Chief Corrigan requests the Rhode Island State Police to conduct an administrative review of the Narragansett Police Department's use of force investigation. The Rhode Island State Police determines that this incident is an internal matter that does not involve the Rhode Island State Police. The Rhode Island State Police Lt. Barry offers to facilitate a meeting with the school department, Rhode Island State Police, and Rhode Island Department of Education ("RIDE"). At no point leading up to this date did Michael or his parents file a complaint against or with the Narragansett Police Department for the February 9, 2018 arrest or use of force used by Officer Rooney

On February 14, 2020, a meeting takes place at RIDE with Chief Corrigan, Captain Matthew Sutton from the Narragansett Police Department, Assistant Solicitor Any Burg from the Town of Narragansett, Dr. Peter Cummings from the Narragansett Police Department, Attorney Steven Adams, Lt. Col. Kevin Barry from the Rhode Island State Police, RIDE Chief of Staff Brian Darrow, RIDE Deputy Commissioner Ana Riley and RIDE Legal Counsel Anthony Cottone. During the meeting, the participants went over the incident and Chief Corrigan and Captain Sutton, explained the use of force and the review of the matter. At the conclusion of the meeting, RIDE Deputy Commissioner Ana Riley communicated to the members of the meeting that she has a better understanding of the incident after hearing from Chief Corrigan, Captain Sutton and Rhode Island State Police Lt. Barry. After that meeting, RIDE never followed up with the Narragansett Police Department or Narragansett School System regarding the incident, nor did the Rhode Island State Police ever follow up with the Narragansett Police Department.

On March 17, 2020, Mr. and Mrs. Blanchette referred Michael for a neuropsychological evaluation at the Center for Neuropsychology & Learning Disorders, Inc., requesting a comprehensive assessment of his psychological functioning following the February 9, 2018 incident. Clinical Neuropsychologist Brett Leimkuhler, Ph.D., administered several tests, interviewed Michael and his parents, and reviewed school and medical records provided by Mrs. Blanchette. Dr. Leimkuhler made findings and based on his findings stated in his report "Michael's clinical history reveals no reported changes or alterations in his cognitive status following the incident on February 9, 2018, and it does not appear that he sustained any cognitive impairment as result." Dr. Leimkuhler outlined seven recommendations for Michael and his parents to follow, noting that his prognosis depends on the cooperation with and response to long-term psychological and psychiatric treatment. Dr. Leimkuhler reviewed his findings and recommendations with Michael and his parents. However, Michael and his parents never followed through with Dr. Leimkuhler's recommendations.

After the February 9, 2018 incident, Michael's parents continued to contact the police to respond to their home for issues regarding Michael. Several of those incidents were monitored and part of the threat assessment conducted by the Narragansett Police Department, including incidents dated July 17, 2017, November 2, 2018, November 10, 2018, December 25, 2018, January 3, 2019, January 26, 2019, January 29, 2019, February 3, 2019, May 14, 2019, June 26, 2019, July 17, 2019, July 18, 2019, and September 5, 2019. Those incidents include reports of Michael in possession of knives, reports of Michael destroying the house, and being physically violent, arrests for trespassing his girlfriend's house and arrests for domestic disorderly and vandalism at the Blanchette's own residence after his sister reported that Michael damaged the door and threatened their father's life.

## IV. APPLICABLE LAW

### Count I: 42 U.S.C. Illegal Stop and Seizure; Count II: 42 U.S.C. Excessive Force

Michael makes various constitutional claims against Defendants. Michael claims his Fourth and Fourteenth Amendment Rights were violated. While Michael's Complaint has many counts, all of the claims relate to whether School Resource Officer Rooney's use of force or restraint was warranted on February 9, 2018 and whether the amount of force used was reasonable. Officer Rooney conduct was "objectively reasonable in light of the facts and circumstances confronting him." The facts and circumstances confronting him are not isolated to the events on February 9, 2018. The facts and circumstances confronting him were an escalating situation over a series of days and months prior to this interaction where Michael was acting out in a dangerous out of control manner.

The 6th Circuit Corut of Appeals held in the case _Bronzino v. Clinton Twp. Police Sergeant Dunn_ in which plaintiff claimed officers used excessive force in executing his arrest, plaintiff's prior bad acts were admissible pursuant to 404(b)(2) to establish the officer's state of mind. Bronzino v. Clinton Twp. Police Sergeant Dunn, 558 Fed. Appx. 613, 615, 2014 U.S. App. LEXIS 5495, *5-6, 93 Fed. R. Evid. Serv. (Callaghan) 1157, 2014 FED App. 0197N (6th Cir.). The 7th Circuit Court of Appeals highlighted in _Palmquist v. Selvik_ that the question comes down to whether the officer had any personal knowledge of the prior acts before the encounter. Palmquist v. Selvik, 111 F.3d 1332, 1340, 1997 U.S. App. LEXIS 8063, *22-23, 46 Fed. R. Evid. Serv. (Callaghan) 1459.

There is also the First Circuit Case _Senra v. Cunnigham_, in which the court found that the officers' prior knowledge/dealings with the plaintiff were relevant because it shed light on the reasonableness of their responses, which the court found pertinent since the claim was for

excessive force. <u>Senra v. Cunningham,</u> 9 F.3d 168, 171-172, 1993 U.S. App. LEXIS 29565, *9-10, 39 Fed. R. Evid. Serv. (Callaghan) 1327, 27 Fed. R. Serv. 3d (Callaghan) 1243. The officers' testimony about the plaintiff's prior conduct was necessary to explain the facts and circumstances that they confronted when they arrived at plaintiff's house and to demonstrate the reasonableness of their conduct

Here, Michael's prior acts are part of the facts of this case and part of the explanation for the facts and circumstances Officer Rooney was confronted with during his encounter with Michael Blanchette in the school hallway on February 9, 2018. Officer Rooney confirmed that Michael's prior acts at school and outside of school with the police department were within his knowledge at the time and relevant to his determination of how much force would be necessary to respond to the situation. See <u>Senra v. Cunningham,</u> 9 F.3d 168, 171-172, 1993 U.S. App. LEXIS 29565, *9-10, 39 Fed. R. Evid. Serv. (Callaghan) 1327, 27 Fed. R. Serv. 3d (Callaghan) 1243. Officer Rooney's knowledge about the prior events involving Michael were taken into consideration for his safety, for Michael's safety and for the other students in the school's safety.

### *Count IV: Assault and Count V: Battery*

To render a Defendant liable in an assault action, the Plaintiff must prove that he was placed in apprehension of imminent harmful or offensive contact. *Restatement (Second) of Torts, § 24.* This is a subjective standard that requires a Plaintiff to be aware of the imminent contact and actually suffer apprehension at the possibility of such contact. *Id. at § 27.* The Plaintiff need not establish, however, that he was frightened by the Defendant's actions, only that he suffered apprehension as a result of the actions. The apprehension required for an assault is of imminent or immediate bodily harm. Words alone, therefore, are not sufficient to make a Defendant liable for assault. If, however, the words, together with other acts or circumstances, put the Plaintiff in

apprehension of imminent harmful or offensive contact, then a Defendant may be liable for assault.  *Id.* *at § 31.*

In order to prove a cause of action for battery, Plaintiff must establish the same intent necessary to prove assault, that is:  Defendant intended to commit a harmful or offensive touching or to create apprehension of the same.  *Id.* *at § 18(1)(a).*  Unlike a claim for assault, however, in a claim for battery, Plaintiff must also show that there has been a harmful or offensive touching on the part of Defendant.  *Id.* *at § 18(1)(b).*  Although the Plaintiff need not be aware that a touching has occurred in order to recover for battery, the Plaintiff must establish that he did not consent to the touching.  Hostile intent toward the plaintiff, or intent to cause him injury or embarrassment, however, is not necessary in order to establish a claim for battery.  Intent to bring about un-permitted contact is sufficient.

A well-recognized "permitted" contact occurs when a police officer is performing his duties.  As noted *infra*, a police officer can use a reasonable amount of force to subdue an individual even if the officer is not acting in self-defense.  *Sheehan v. West, 27 R.I. 84 (1905).*  Such privileged contact relieves the officer from liability for assault and battery. Officer Rooney's use of force on Michael was taken into consideration for his safety, for Michael's safety and for the other students in the school's safety.

### *Count VI: False Imprisonment*

In the instant case, Plaintiff alleges that he was falsely arrested.  In order to maintain a claim for false arrest and imprisonment under state law, Plaintiff must prove by a preponderance of the evidence that:

1.  the Defendants intended to confine him;

2.  the Plaintiff was conscious of the confinement;

3. the Plaintiff did not consent to the confinement; and

4. the confinement was not otherwise privileged.

*Beaudoin v. Levesque*, 697 A.2d 1065, 1067 (R.I. 1997).  Plaintiff must also demonstrate that he was detained without any legal justification.  *Id.*

However, the finding of probable cause is the legal justification in this matter.  "Probable cause exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable cause and prudence in the belief that the defendant is committing or has committed a crime."  *Floyd v. Farrell*, 765 F.2d 1, 5 (1st Cir. 1985).

Subjective intentions play no role in ordinary, probable cause Fourth Amendment analysis."  *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 1774 (1996).  Rather an objective test must be applied.  The question is whether another officer standing in the shoes of these Defendants and having the same information these Defendants had, would reasonably have come to the conclusion that there was probable cause to arrest and detain the Plaintiff.  *Floyd*, 765 F.2d at 5.  This determination must be made by viewing the totality of the circumstances.  *Rivera v. Murphy*, 979 F.2d 259, 263 (1st Cir. 1992).

Here, there was probable cause to arrest Michael for disorderly conduct and resisting arrest. Michael's words alone and a "middle finger" were not the basis for the probable cause for disorderly conduct.  He was arrested for disorderly conduct because of a combination of his actions during his encounter with Officer Rooney, including his words, his non-compliance with Officer Rooney's verbal commands and warnings, and his maneuvers within the setting of a school with other students around. An officer standing in the shoes of Officer Rooney possessing the same knowledge and information as Officer Rooney at the time would reasonably come to the

conclusion that there was probable cause to arrest Michael for disorderly conduct. During the arrest, Michael resisted arrest which led to probable cause for him to be charged under Rhode Island general laws for resisting arrest**.**

### *Count VII: Intentional Infliction of Emotional Distress*

In recognizing the tort of intentional infliction of emotional distress, the Rhode Island Supreme Court has generally followed the Restatement (Second) on Torts. *Curtis v. State Department Children and their Families, 522 A.2d 203, 208 (R.I. 1987); Champlin v. Washington Trust Co., 478 A.2d 985, 989 (R.I. 1984).* Thus, under Rhode Island law, in order to maintain an action for intentional infliction of emotional harm:

> (1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe. *Champlin, 478 A.2d at 989.*

In addition, the Rhode Island Supreme Court has recognized the subjective nature of such claims for emotional distress and the possible hardship imposed on Defendants in attempts to defend such claims. Thus, in order to maintain a claim for the intentional infliction of emotional distress, the Plaintiff must also provide at least some proof of medically established physical symptomatology. *Curtis, 522 A.2d at 208; Champlin, 478 A.2d at 989. Hawkins v. Scituate Oil Co., Inc., 723 A.2d 771, 773 (R.I. 1999); Vallinoto v. DiSandro, 688 A.2d 830, 838-40 (R.I.1997); Clift v. Narragansett Television L.P., 688 A.2d 805, 812-14 (R.I.1996).*

### *Count VIII: Malicious Prosecution*

Michael claims Defendants Kyle Rooney, Sean Corrigan and the Town of Narragansett are liable to him for malicious prosecution. To state a claim for malicious prosecution, a plaintiff must allege that "criminal proceedings were initiated against him without probable cause and for an improper purpose and were terminated in his favor." Landrigan v. City of Warwick, 628 F.2d 736, 745 n.6 (1st Cir. 1980); Senra

v. Cunningham, 9 F.3d 168, 174 (1st Cir. 1993) ("to establish a claim of malicious prosecution under Rhode Island law, plaintiff must prove that: 1) defendants initiated a criminal proceeding against him; 2) with malice; 3) without probable cause; and 4) which terminated in plaintiff's favor"); Ims v. Town of Portsmouth, 32 A.3d 914, 922 (R.I. 2011). Thus, a malicious prosecution claim brought under section 1983 "requires a showing of the absence of probable cause to initiate proceedings, as does the parallel state tort claim of malicious prosecution." Meehan v. Town of Plymouth, 167 F.3d 85, 89 (1st Cir. 1999). Although Rhode Island has long recognized this tort, "it is nevertheless a disfavored cause of action because it 'tend[s] to deter the prosecution of crimes and/or to chill free access to the courts.'" Ims v. Town of Portsmouth, 32 A.3d 914, 922 (R.I. 2011) (quoting Brough v. Foley, 572 A.2d 63, 66 (R.I. 1990)).

Lack of probable cause is a "necessary element" for a malicious prosecution claim. Beaudoin, 697 A.2d at 1067. "Probable cause exists when the facts and the circumstances within the officer's knowledge at the time of arrest, and of which he has reasonably trustworthy information, would warrant a reasonably prudent person's belief that a crime has been committed and the suspect committed the crime." Id. (quoting Dyson, 670 A.2d at 239). As described in detail above, Officer Rooney had probable cause to arrest Michael As such, his claim for malicious prosecution must fail.

### Count IX: Supervisory Liability and Count X: Municipal Liability

Under Rhode Island Law, liability of an employer for negligent hiring and supervision "is premised on its failure to exercise reasonable care in selecting [and retaining] a person, who the employer knew or should have known, was unfit or incompetent for the employment, thereby exposing third parties to an unreasonable risk of harm" Welsh Mfg. Division of Textron, Inc. v. Pinkertons Inc., 474 A.2d 436, 440 (RI 1984).

### Count XI: Negligence:

Michael pleads negligence as a cause of action, but not in ordinary negligence. Michael's negligence claim is grounded in his unlawful arrest claim. Plaintiff claims professional negligence against Superintendent Peter Cummings and Principal Daniel Warner regarding their

administrative handling of matters involving Michael leading up to and following the February 9, 2018 incident. Under Rhode Island Law, in order to establish a claim for negligence, Plaintiff must prove "1) a legally cognizable duty owed to him by the Defendants' 2) a breach of that duty; 3) proximate causation between the Defendants' conduct and his injury; and 4) actual loss or damage." Forest v. Pawtucket Police Department, 290 F.Supp.2d 215, 233 (D.R.I. 2003)(citing Mills v. State Sales, Inc., 824 A.2d 461, 468(R.I. 2003)). See also Finucane v. Town of Belchertown, 808 F.Supp. 906, 911 (D. Mass. 1992)(granting summary judgment on state law negligence claim stemming from an alleged false arrest where the police officers had reasonable grounds or probable cause to arrest). A legal duty "requires that person to conform his or her actions to a particular standard." Kuzniar v. Keach, 709 A.2d 1050, 1055 (R.I. 1998). The Plaintiff must 'establish a standard of care as well as a deviation from that standard'. Morales et al. v. Town of Johnston et al., 895 A.2d 721, 732 (R.I. 2006) (citing Sousa v. Chaset, 519 A.2d 1132 (R.I. 1987)).

A plaintiff must "establish a standard of care as well as a deviation from that standard." Morales v. Town of Johnston, 895 A.2d 721, 732 (R.I. 2006) (emphasis added). "It is well settled that expert testimony is required to establish any matter that is not obvious to a lay person and thus lies beyond common knowledge." R.I. Resource Recovery Corp. v. Restivo Monacelli LLP, 189 A.3d 835, 839 (R.I. 2012). The facts of this case clearly establish that professional judgment regarding administrative matters is not within the ken of the lay person. The lay person cannot define the standard of a care for school administrators handling a student with progressive disciplinary issues, with escalating behavior and with specific administrative protocols in place like re-entry meetings. Michael's failure to identify an expert to define the duty of care Defendant Superintendent Cummings and Principal Daniel Warner owed in their exercise of their professional judgment as school administrators is fatal to Plaintiff's

negligence claim. As described above Plaintiff will be unable meet each element necessary to prove his claim of negligence.

V.      **EVIDENTIARY ISSUES**

1. Motion in limine regarding the negligence claim against Defendants Superintendent Peter Cummings and Principal Daniel Warner.

VI.     **ESTIMATED LENGTH OF TRIAL**

8 to 10 trial days.

VII.    **WITNESSES**

1. Emily Sweeney, School Secretary at Narragansett High School

2. Toby Gibbons, Assistant Principal at Narragansett High School during the relevant time.

3. Witness L.M., Narragansett High School student during the relevant time who provided a witness statement for the February 9, 2018 incident.

4. Witness J.K., Narragansett High School student during the relevant time who provided a witness statement for the February 9, 2018 incident.

5. Daniel Warner, Principal at Narragansett High School

6. Peter Cummings, Superintendent for Narragansett School System,

7. Leslie Brow, Director of Student Services, Narragansett School System during the relevant time

8. Tom Mitchell, parent of a student at Narragansett High School who observed Michael's behavior and statements on February 1, 2018

9. Officer Kyle Rooney, Narragansett Police Department employed as an Officer and School Resource Officer for Narragansett School System.

10. Sargent Kevin Bousquet, Narragansett Police Department

11. Captain Matthew Sutton, Narragansett Police Department

12. Detective James Wass, Narragansett Police Department,

13. Detective John Silveira, Narragansett Police Department

14. Officer James M. Fitzgerald, Narragansett Police Department

15. Expert David DelBonis, Defendants' police expert

16. Charlene Blanchette, Michael Blanchette's mother

17. David Blanchette, Michael Blanchette's mother

## VIII.  EXHIBITS

**Medical Records:**

- South County Hospital Medical Records

- Gateway Healthcare Records

- Butler Hospital Records

- McClean Hospital Records

- Bradley Hospital Records

- Baxter Behavior Health Records

- Coastal Medical Records

- The Center for Neuropsychology & Learning Disorders, Inc. records including the Neuropsychological Evaluation Report.

**Police Records:**

- Narragansett Call Logs regarding Michael Blanchette

- Narragansett Incident and Arrest Reports regarding Michael Blanchette,

- Central Index for Michael Blanchette

- Package for Arrest #18-86-AR on February 9, 2018, containing witness statements, Sgt. Bousquet's report, and Use of Force Review

- Use of Force Policy, 300.01 (2017)

- R.I. General Laws § 11-45-1. Disorderly conduct.

- R.I. General Laws § 12-7-10 Resisting legal or illegal arrest

- Narragansett Police Department's Threat Assessment regarding Michael Blanchette reported February 20, 2018, with entries entered and modified on January 14, 2019, and October 9, 2019, case status: Open as of 1/29/2021.

- Detective James Wass Investigation documents and correspondence regarding Michael Blanchette and preservation request to Snapchat for time period between February 4, 2018 and March 5, 2018

- Narragansett Police Department, CD containing subpoenaed Snapchat records

- Family Court Petitions and Juvenile Release Form Signed and dated February 9, 2018

- School Resource Officer Program, Memorandum of Understanding between The Narragansett School Department and the Narragansett Police Department

- Letter from Ray Gomes from RYSE regarding Michael Blanchette at the State House, dated April 4, 2018

- Juvenile Release From Custody Form, dated November 2, 2018

- Family Court Petitions, dated November 7, 2018

- Family Court- Notice of Hearing, dated November 13, 2018, with notations for 3/5/2019, and 6/4/2019 evaluation.

- Email correspondence from Matthew Sutton to Marc Alboum re: Narragansett Police Documents, dated January 13, 2020

- Email correspondence by and between Sean Corrigan (NPD), Brian Darrow (RIDE), Peter Cummings (NSS), Kevin Barry (RISP), Lauren Ruggeiro (NSS), Colleen Brophy (RIDE), Ana Riley (RIDE), Anthony Cottone (Attorney for RIDE), Stephen Adams (Attorney for NSS) re: Meeting Between RSIP, RIDE, NSS and NPD re: NHS SRO Incident, dated January 27, 2020 to February 3, 2020.

- Email correspondence by and between Sean Corrigan and Peter Cummings re: Follow up on NHS SRO Incident, dated January 28, 2020 to January 29, 2020

- Email correspondence by and between Sean Corrigan and Lauren Ruggiero Re: Confirmed: Meeting between RISP, RIDE, NSS, and NPD re. NHS SRO Incident dated January 29, 2020 to February 3, 2020

- Email correspondence by and between Sean Corrigan and Peter Cummings Re: Response to RIDE, dated February 3, 2020.

- Use of Force Review by Matthew Sutton containing markings by Matthew Sutton, and police reports for January 4, 2017, April 20, 2017, May 30, 2017, May 31, 2017, October 17, 2017, November 27, 2017, January 29, 2018, July 17, 2018, November 2, 2018, November 10, 2018, February 3, 2019, and May 14, 2018, containing his markings from the February 2020 meeting with RIDE and Rhode Island State Police

**Narragansett School System Records**

- Narragansett High School Report of Disciplinary Referral, Michael Blanchette, dated September 8, 2017
- Narragansett High School Report of Disciplinary Referral, Michael Blanchette, dated September 19, 2017
- Letter from Toby Gibbons to Mr. and Mrs. Blanchette re: Michael Blanchette, dated September 20, 2017
- Narragansett High School Report of Disciplinary Referral, Michael Blanchette, dated October 17, 2017
- Letter from Toby Gibbons to Mr. and Mrs. Blanchette re: Michael Blanchette, dated October 18, 2017
- Narragansett High School Report of Disciplinary Referral, Michael Blanchette, dated October 24, 2017
- Letter from Toby Gibbons to Mr. and Mrs. Blanchette re: Michael Blanchette, dated October 30, 2017
- Narragansett High School Report of Disciplinary Referral, Michael Blanchette, dated November 1, 2017
- Narragansett High School Report of Disciplinary Referral, Michael Blanchette, dated November 29, 2017
- Letter from Toby Gibbons to Mr. and Mrs. Blanchette re: Michael Blanchette, dated November 30, 2017
- Narragansett High School Report of Disciplinary Referral, Michael Blanchette, dated December 12, 2017

- Narragansett High School Report of Disciplinary Referral, Michael Blanchette, dated January 9, 2018

- Letter from Toby Gibbons to Mr. and Mrs. Blanchette re: Michael Blanchette, dated January 9, 2018

- Narragansett High School Report of Disciplinary Referral, Michael Blanchette, dated January 29, 2018

- Letter from Toby Gibbons to Mr. and Mrs. Blanchette re: Michael Blanchette, dated January 30, 2018

- Narragansett High School Report of Disciplinary Referral, Michael Blanchette, dated February 1, 2018

- Letter from Toby Gibbons to Mr. and Mrs. Blanchette re: Michael Blanchette, dated February 2, 2018

- Log Entries for Discipline and Attendance dated from May 13, 2015 to February 13, 2018

- Risk Assessment by Dr. Ruth Anderson, Clinical/School Psychologist for Narragansett School System, dated February 5, 2018

- Functional Behavioral Assessment by Dr. Ruth Anderson, Clinical/School Psychologist for Narragansett School System, dated February 27, 2018

- Community and School Support Services records from Kim Dennnett, LMHC, Chariho Alternative Learning Academy (associated with RYSE) March 6, 2018 to June 11, 2019

- Email correspondence by and between Leslie Brow, Director of Student Services, Narragansett School System and Raymond Gomes from RYSE regarding Michael Blanchette

- Email correspondence by and between Leslie Brow, Director of Student Services, Narragansett School System and Wendy Gillam from RYSE regarding Michael Blanchette

- Email correspondence by and between Leslie Brow, Peter Cummings and Barry Ricci, Superintendent of Chariho Regional School District (associated with RYSE)
- Email correspondence by and between Leslie Brow, Peter Cummings, Susan McNight and Guilio Lugini regarding Michael Blanchette
- Email correspondence by and between Leslie Brow, Toby Gibbons, Peter Cummings and Dan Warner regarding Michael Blanchette
- Email correspondence by and between Leslie Brow, Susan Depot, Susan Doboszynksi regarding Michael Blanchette
- Email correspondence by and between Charlene Blanchette and Leslie Brow re: MB, dated May 15, 2019
- Email correspondence by and between Charlene Blanchette and Leslie Brow re: MB, dated May 16, 2019
- Email correspondence by and between Charlene Blanchette and Leslie Brow re: Alg. 2, dated May 16, 2019
- Letter from Chief Corrigan to Dr. Peter Cummings, Subject: Response to Resistance/Non-Compliance Report 2018, dated January 13, 2020
- Letter from RIDE Commissioner Angelica Infante-Green to Dr. Cummings Re: Narragansett High School Resource Officer Kevin Rooney, dated January 27, 2020.
- Letter from Dr. Peter Cummings to RIDE Commissioner Angelica Infante- Green Re: Narragansett SRO Inquiry, dated February 4, 2020.

Defendants,
By its Attorneys,


/s/ Marc DeSisto
Marc DeSisto, Esq. (#2757)

*/s/ Caroline V. Murphy*                                                  
Caroline V. Murphy, Esq. (#9735)
DeSisto Law LLC
60 Ship Street
Providence, RI 02903
(401) 272-4442
marc@desistolaw.com
caroline@desistolaw.com


<u>CERTIFICATION OF SERVICE</u>

I hereby certify, that on this 5th day of January 2023, I electronically served this

document through the electronic filing system upon the following parties:


*/s/ Caroline V. Murphy*